# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

JOHN D. BRYAN, et al.               \*
                                      \*
                                      \*

v.                                  \*           Civil No. CCB-17-2975
                                      \*

FAY SERVICING, LLC
                                      \*

## MEMORANDUM

Pending before the court is defendant Fay Servicing, LLC's ("Fay Servicing") motion for summary judgment. (ECF No. 25). This case arises from the foreclosure sale of John D. Bryan and Benita T. Bryan's (collectively, "the Bryans") home. Following the foreclosure, the Bryans sued Fay Servicing, their mortgage servicer, alleging fraud and detrimental reliance, along with violations of the Maryland Consumer Protection Act ("MCPA") and the Real Estate Settlement Procedures Act ("RESPA"). For the reasons outlined below, the court will grant Fay Servicing, LLC's motion. The issues have been briefed and no oral argument is necessary. *See* Local Rule 105.6 (D. Md. 2018).

## BACKGROUND

On June 15, 2005, the Bryans took out a mortgage loan on their property, located at 9419 Joleon Road, Randallstown, Maryland (the "Property"). (Compl. ¶ 6).[1] Fay Servicing is the mortgage servicer for the Bryans' loan. (*Id.* ¶ 7). In May 2015, the Bryans executed a mortgage modification that became effective on June 1, 2015. (Def.'s Mot. Summ. J. Ex. 6 ["Modification Agreement"] at 2, 10, ECF No. 25-9). Fay Servicing asserts, and the Bryans do not dispute, that the Bryans were three years behind on their mortgage payments at the time of the 2015 mortgage

---

[1] Facts cited to in the complaint are not contested.

1

modification, and as of the time of this suit, the Bryans were still behind on mortgage payments. (*Id.* at 1; Mem. P. & A. Supp. Def.'s Mot. Summ. J. ["Def.'s Mot."] at 23; Mem. P. & A. Supp. Pls.' Resp. Opp'n ["Pls.' Resp."] at 7). On April 5, 2016, a foreclosure action was brought against the Property in the Circuit Court for Baltimore County, Maryland. (Compl. ¶ 8). On February 25, 2017, as part of an effort to stop the foreclosure, the Bryans submitted a loss mitigation application. (*Id.* ¶ 10). The pending claims arise out of a series of telephone communications between the Bryans and various Fay Servicing employees regarding the Bryans' application.

During a March 10, 2017, telephone call, a Fay Servicing employee identified as Don informed Ms. Bryan that the Bryans' loss mitigation application was incomplete. (Def.'s Mot. Summ. J. Ex. 2 ["March 10 call"] at 4:06-4:20, ECF No. 25-5).[2] He told Ms. Bryan that the application was missing a signed and dated profit and loss statement, schedules from the Bryans' tax returns, a letter explaining that Ms. Bryan's business income was not reported via a 1099 Form, Mr. Bryan's 2015 W-2 forms, and Ms. Bryan's most recent Social Security Disability benefit letter. (March 10 Call at 10:45-17:36). Don explained how to create a profit and loss statement, (*id.* at 18:30-19:50), told Ms. Bryan that the statement needed to span January 1, 2016, through February 28, 2017, (*id.*), and again reminded Ms. Bryan that the statement needed to be signed and dated, (*id.* at 20:20-20:24). Don noted that he had "no control" over the ultimate delay of the foreclosure sale, and that, generally, a completed application was required 8 days prior to the scheduled foreclosure sale in order to stop the sale. (*Id.* at 20:40-21:17).

During a subsequent March 14, 2017, call, Ms. Bryan spoke with Mr. Morrison ("Morrison"), another Fay Servicing employee. Morrison reminded Ms. Bryan that the ultimate outcome was "not up to me," and that the underwriting department needed to mark the file

---

[2] Citations to the March 10 and March 14, 2017 calls include timestamps for specific propositions.

complete in order to delay the foreclosure sale. (Def.'s Mot. Summ. J. Ex. 3 ["March 14 call"] at 3:50-3:55, 8:30-8:38, ECF No. 25-6).

During an April 11, 2017, call, Morrison told Ms. Bryan that the profit and loss statement she had submitted covering January through December 2016 was not signed and dated. (Dep. Bryan 142:4–12). He informed Ms. Bryan that "[t]hat's all I need . . . [t]his will get the file marked complete, and it will get the sale date postponed until they reach a decision." (*Id.* 142:13-143:1). Morrison stated he would "try to push for the file to get marked complete." (*Id.* 144:5–6). He later stated "we only need one more thing and I can . . . mark it complete." (*Id.* 145:18–21). Ms. Bryan asked to be notified when the foreclosure sale was postponed. (*Id.* 148:21-149:3). She never received any notification stating that the sale was postponed. (*Id.* 149:4–7). Shortly after the April 11, 2017 call, Ms. Bryan submitted a signed and dated profit and loss statement for January 2016 to December 2016. (Def.'s Mot. Summ. J. Ex. 5, ECF No. 25-8).

During an April 17, 2017, call, Morrison stated that he was "trying to get this moved, pushed through marked complete." (Bryan Dep. 150:11-12). He stated that he had escalated the file "marked as complete" but that there was no way for him to tell where the underwriting department was in the process. (*Id.* 150:15-16). He repeated that he had asked the underwriting department to "mark the file complete so I can get this stopped." (*Id.* 151:7-8). He told Ms. Bryan that the underwriting department had noted the package was missing the "profit and loss and 2016 personal/business tax returns." (*Id.* 151:11-13). When Ms. Bryan informed him that she had not filed her 2016 tax returns yet he stated "I don't know what they're going to say about that. I'm hoping that we can get by with it." (*Id.* 152:5-6). He stated "I'm telling that you haven't filed 2016 tax returns yet and I'm asking to still mark it complete, but that's the roll of the dice." (*Id.* 153:11-14). He did, however, repeatedly indicate that Ms. Bryan should not be concerned,

stating: "I'm going to get this postponed"; "don't worry about it"; "we're going to get what we need"; "I'm pushing, I'm pushing for you." (*Id.* 156:7-157:12).

Ms. Bryan indicated during her deposition that she knew the underwriting department had to mark the application complete before the foreclosure would be postponed. (*Id.* 162:17-20). On April 24, 2017, Ms. Bryan called Fay Servicing to check on the status of her application, but they were unable to provide an update. (*Id.* 165:13-19). On April 25, 2017, the Property was sold by foreclosure auction. (*Id.* ¶ 9).

After learning about the foreclosure sale, the Bryans sued Fay Servicing alleging: violations of the Maryland Consumer Protection Act (Count I); detrimental reliance (Count II); violations of the Real Estate Settlement Procedures Act (Count III); and fraud (Count IV). (Compl. ¶¶ 25–55, ECF No. 2). The Bryans also sought a declaratory judgment in their favor (Count V) and injunctive relief (Count VI). (*Id.* ¶¶ 56–68). The Bryans have alleged solely noneconomic damages. (Compl. ¶ 24). The parties subsequently agreed to limit the scope of the pending claims to whether: (1) during an April 11, 2017, conversation, Fay Servicing represented that it would stop the foreclosure if the Bryans submitted a complete profit and loss statement;[3]

---

[3] Email correspondence between the parties indicates that they agreed to limit this claim to whether "Fay Servicing represented that it would stop the April 2017 foreclosure if provided with a *complete* loss mitigation (regardless of the 37-day period since Divine Morrison simply stated categorially that the sale would be cancelled upon receiving a complete loss mitigation application)." (Limitations of Claims at 2 (emphasis added)). But in their Response, the Bryans argue Fay Servicing promised it would cancel the foreclosure sale "if the Bryans submitted a *signed* profit and loss statement." (Pls.' Resp. at 1, ECF No. 28-1). The Bryans' shift in focus from a complete to a signed profit and loss statement evinces the weakness of their claim. The Bryans have not disputed that they never submitted the profit and loss data that Fay Servicing requested for January and February 2017. (*See* March 10 call at 18:30-19:50). Accordingly, they have retreated to a claim that Fay Servicing promised to stall the foreclosure based on a substantively incomplete, signed profit and loss statement. They do so in reliance on a snippet of conversation from the April 11, 2017, call while ignoring the many instances, both before and after the call, in which Ms. Bryan was informed that her application was missing components, and that only the underwriting department had the authority to delay the foreclosure. (*Id.* at 10:45-17:36, 18:30-19:50, 20:20-20:24 20:40-21:17; March 14 call at 3:50-3:55, 8:30-8:38; Dep. Bryan at 142:4-12, 144:5-6, 150:15-16, 151:7-13, 152:5-6, 153:11-14). Because the court finds that no genuine dispute as to any material fact exists and Fay Servicing is entitled to judgment as a matter of law under either theory

and (2) Fay Servicing is liable under RESPA for proceeding with the foreclosure sale after the Bryans allegedly provided a complete loss mitigation application prior to the foreclosure sale. (Def.'s Mot. Summ. J. Ex. 1 ["Limitation of Claims"], ECF No. 25-4). Accordingly, the court will limit its consideration of the Bryans' claims to these two allegations.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no *genuine* dispute as to any *material* fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (emphases added). "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012)). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Accordingly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]" *Anderson*, 477 U.S. at 247–48.

The court must view the evidence in the light most favorable to the nonmoving party, *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (per curiam), and draw all reasonable inferences in that party's favor, *Scott v. Harris*, 550 U.S. 372, 378 (2007) (citations omitted); *see also Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 568–69 (4th Cir. 2015). At the same time, the court must "prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)).

(premised on a complete or signed profit and loss statement, respectively) this distinction makes little difference.

Here no genuine dispute as to any material fact exists—the parties have submitted the full recordings of the March 10 and March 14, 2017 calls. (ECF No. 25-5; ECF No. 25-6). The pertinent portions of the April 11, April 17, and April 24, 2017 phone calls are included in the transcript of Ms. Bryan's deposition. (Bryan Dep., ECF No. 25-7 at 139–47, 149–60, 162–65). Accordingly, the court is presented with pure questions of law.

## ANALYSIS

MCPA claim – Count I

Under the MCPA, "a person may not engage in any unfair, abusive, or deceptive trade practice" in the "extension of consumer credit" or the "collection of consumer debts." Md. Code. Ann., Com. Law §§ 13-303(4)-(5). Section 13-408 provides for a private right of action, *id.* § 13-408, and the Bryans initially pled claims under sections 13-301(1) and 13-301(14). (Compl. ¶¶ 25–34). The Bryans subsequently winnowed down their pleadings to a claim under § 13-301(1), abandoning their § 13-301(14) claim. (Limitation of Claims at 2). There are no genuine disputes as to material facts, and Fay Servicing is entitled to judgment as a matter of law under § 13-301(1). Accordingly, the court will grant Fay Servicing's Motion for Summary Judgment as to Count I.

The Bryans allege that Fay Servicing violated § 13-301(1) by promising to stop the foreclosure sale of the Bryans' home if they submitted a signed profit and loss statement. (Limitation of Claims at 1–2; Pls.' Resp. at 1; Compl. ¶¶ 9–18). To state a claim under § 13-301(1), the Bryans must "allege (1) an unfair or deceptive practice or representation that is (2) relied upon, and (3) causes them actual injury." *Stewart v. Bierman*, 859 F.Supp.2d 754, 768 (D. Md. 2012) (citing *Lloyd v. General Motors Corp.*, 397 Md. 108, 143 (Md. 2007) ("[T]he consumer must have suffered an identifiable loss, measured by the amount the consumer spent or

6

lost as a result of his or her reliance on the sellers' misrepresentation.")) *aff'd sub nom. Lembach v. Bierman*, 528 F.App'x 297 (4th Cir. 2013). As defined by the MCPA, an unfair or deceptive trade practice is a "[f]alse . . . or misleading oral or written statement . . . or other representation of any kind which has the capacity, tendency, or effect of deceiving or misleading consumers." § 13-301(1).

The Bryans argue that, during an April 11, 2017, phone call, Morrison promised Ms. Bryan that the scheduled foreclosure sale of the Bryans' home would be cancelled if the Bryans submitted a signed profit and loss statement. Specifically, Morrison stated: "I'm talking about the profit and loss that you sent with the logo . . . . I need that signed and dated. . . . Yes. That's all I need. . . . This will get the . . . sale date postponed. . . ." (Bryan Dep. at 142:4-143:1). Morrison, however, almost immediately qualified his statement, clarifying: "I will forward it immediately, and yeah, I would say maybe in a week or so, I'll know better. What I'm going to do is once I get that, I'm going to try to push for the file to get marked complete." (*Id.* at 143:1-6). The Bryans may not selectively cull the April 11, 2017, telephone call, relying only on portions of the call that support their claim while ignoring contemporaneous statements of hesitance and qualification. *See Spaulding v. Wells Fargo Bank, N.A.*, 714 F.3d 769, 780 (4th Cir. 2013) ("But this selective parsing of the letter is to no avail . . . "). Morrison stated that he would "push" to have the file marked complete, thereby forestalling the foreclosure sale. This is not a clear commitment to cancel the sale of the Bryans' home.

What is more, on March 10, 2017, a different Fay Servicing employee clearly told Ms. Bryan what a profit and loss statement was, how to create it, and that the statement needed to include information from January and February 2017. (March 10 call at 18:30-19:50, 20:20-20:24). Further, during both the March 10 call and a March 14, 2017 call, Ms. Bryan was advised

that the employee she spoke with over the phone had "no control" over the delay or cancellation

of the foreclosure sale, because only the underwriting department could formally mark the file

complete and stop the sale. (*Id.* at 20:40-21:17; March 14 call at 3:50-3:55, 8:30-8:38). With this

context in mind, it is hard to credit the Bryans' assertion that Morrison's equivocal statements on

April 11, 2017, constituted a clear promise or that they had the "capacity, tendency, or effect of

deceiving or misleading." § 13-301(1).

Detrimental reliance and fraud claims – Counts II and IV

The Bryans plead claims of detrimental reliance and fraud. (Compl. ¶¶ 35–42, 49–55). To

succeed on the merits of either claim, the Bryans must demonstrate that they reasonably relied, to

their detriment, on a promise or misrepresentation made by Fay Servicing. *See Pavel*

*Enterprises, Inc. v. A.S. Johnson Co., Inc.*, 342 Md. 143, 166 (Md. 1996) (To establish

detrimental reliance a plaintiff must demonstrate: "(1) a clear and definite promise; (2) where the

promisor has a reasonable expectation that the offer will induce action or forbearance on the part

of the promise; (3) which does induce actual and reasonable action or forbearance by the

promise; and (4) causes a detriment which can only be avoided by the enforcement of the

promise.") (citing Restatement (Second) of Contracts § 90(1) (1979)); *see also Philip Morris Inc.*

*v. Angeletti*, 358 Md. 689, 751–52 (Md. 2000) (To prevail on a fraud claim, a plaintiff must

establish: "(1) that the defendant made a false representation to the plaintiff, (2) that its falsity

was either known to the defendant or that the representation was made with reckless indifference

as to its truth, (3) that the misrepresentation was made for the purpose of defrauding the plaintiff,

(4) that the plaintiff relied on the misrepresentation and had the right to rely on it, and (5) that the

plaintiff suffered compensable injury resulting from the misrepresentation.") (quoting *Nails v. S*

*& R, Inc.*, 334 Md. 398, 415 (Md. 1994)). In assessing whether reliance was reasonable, the court

"view[s] the act in its setting, which will include the implications and promptings of usage and fair dealing." *Sass v. Andrew*, 152 Md.App. 406, 441 (2003) (quoting *Giant Food v. Ice King*, 74 Md.App. 183, 192 (1988)).

No reasonable jury could find that Fay Servicing made a "clear and definite promise" or misrepresentation during the April 11, 2017, call, or that the Bryans reasonably relied on Morrison's statement. The Bryans allege that Morrison told them that all they needed to do was sign the profit and loss statement they had submitted in order to stall the foreclosure of their home. But the record is replete with evidence to the contrary.

As detailed above, the Bryans focus entirely on Morrison's initial statement: "[t]hat's all I need. . . . This will get the . . . sale date postponed. . . ." (Bryan Dep. at 142:4-143:1). The Bryans ignore Morrison's subsequent clarification: "I will forward it immediately, and yeah, I would say maybe in a week or so, I'll know better. What I'm going to do is once I get that, I'm going to try to push for the file to get marked complete." (*Id.* at 143:1-6). In this second statement, Morrison acknowledged that he is forwarding the profit and loss statement to another department and stated that he will "try to push" for the file to be marked complete—indicating that the decision is not in his hands. (*Id.*). And Ms. Bryan had already been advised that the underwriting department, rather than the Fay Servicing employees with whom she communicated, had ultimate control over the foreclosure sale. (March 10 call at 10:45 to 17:36, 20:40-21:17; Bryan Dep. at 162:17-20). Accordingly, it was not reasonable for Ms. Bryan to rely on Morrison's statement.

Further, the Bryans allege that, in reliance on Morrison's statement, they did not take any other defensive action to forestall the foreclosure sale of their home. (Compl. ¶¶ 31, 37, 52). But the Bryans have not alleged that Morrison or any other Fay Servicing employee directed them to

refrain from taking defensive action. *See Green v. Wells Fargo Bank, N.A.*, 927 F.Supp.2d 244, 255–56 (D. Md. 2013); *Dainty v. Wells Fargo Bank, N.A.*, No. TDC-16-2755, 2017 WL 750478, at *6 (D. Md. 2017). The Bryans' decision not to take contemporaneous defensive action to prevent the foreclosure sale of their home was not reasonable reliance because of the absence of any explicit instructions to refrain from taking defensive action, the qualified nature of Morrison's statements, and Ms. Bryan's previous conversations with Fay Servicing employees.[4]

Finally, the Bryans have not contested Fay Servicing's assertion that they never submitted profit and loss data from January and February 2017. Because Ms. Bryan was told as early as March 10, 2017, that a complete loss mitigation application needed to include profit and loss data from January 1, 2016, through February 28, 2017, it was unreasonable for the Bryans to assume the foreclosure sale would be stalled when they had not submitted data from either January or February 2017. (*See* March 10 call at 18:30-19:50; Def.'s Mot Ex. 5 ["Signed Profit & Loss Statement"] at 2, ECF No. 25-8).

Accordingly, the court will grant Fay Servicing's Motion for Summary Judgment as to Count II and Count IV.

RESPA claim – Count III

The Bryans allege that Fay Servicing violated subsection 1024.41 of Regulation X of RESPA, which limits a mortgage servicer's ability to conduct a foreclosure sale if a borrower submits a complete loss mitigation application "more than 37 days before a foreclosure sale."

---

[4] This is especially true when the court considers that in an April 17, 2017, call, eight days before the scheduled foreclosure sale of the Bryans' home, Ms. Bryan was informed that the chance of successfully delaying the foreclosure proceedings was akin to the "roll of the dice." (Bryan Dep. 153:11-14). Yet, the Bryans still did not take any defensive action.

§ 1024.41(g).[5] Specifically, if a timely loss mitigation application is received in accordance with this provision, a foreclosure sale can be conducted only if the servicer sends notice pursuant to § 1024.41(c)(1)(ii), the borrower rejects the loss mitigation options offered by the servicer, or the borrower does not perform under an agreement on a loss mitigation option. § 1024.41(g)(1)-(3). The Bryans allege that they submitted a complete loss mitigation application on March 10, 2017, more than 37 days before their house was ultimately sold, and therefore Fay Servicing is liable for violating § 1024.41(g).

The Bryans' loss mitigation application, however, was untimely. The Bryans submitted what they allege was a complete loss mitigation application on March 10, 2017. At that time, the foreclosure of the Bryans' home was scheduled for March 15, 2017. (Def.'s Mot. at 17; March 10 call at 4:55-5:19). It was subsequently postponed until April 26, 2017. RESPA § 1024.41(b)(3) specifies that:

> To the extent a determination of whether protections under this section apply to a borrower is made on the basis of the number of days between when a complete loss mitigation application is received and when a foreclosure sale occurs, such determination shall be made *as of the date a complete loss mitigation application is received.*

§1024.41(b)(3) (2013) (emphasis added). Accordingly, to determine whether the protections of § 1024.41(g) inure, the court considers whether the Bryans' loss mitigation application was received 37 days before the date of foreclosure that was scheduled as of the date the Bryans' application was received. On March 10, 2017, when the application was received, the foreclosure was scheduled for March 15, 2017. The Bryans' loss mitigation application was therefore untimely, and Fay Servicing cannot be held liable under § 1024.41(g).

This interpretation of the plain text of § 1024.41(b)(3) has been affirmed by the Eleventh

---

[5] Regulation X was amended in 2017. Because the events at issue occurred in the first half of 2017, the court analyzes the version that was effective from January 10, 2014, through October 19, 2017.

Circuit, the only Circuit to directly address the issue, and accords with the Consumer Protection Bureau's (the "Bureau") interpretation of RESPA. *See Lage v. Ocwen Loan Servicing LLC,* 839 F.3d 1003, 1009–11 (11th Cir. 2016); Amendments to the 2013 Mortgage Rules, 78 Fed. Reg. 60382, 60396-97 (Oct. 1, 2013). As the Bureau noted, "structuring the rule such that a borrower's rights may be added or removed because a foreclosure sale was moved or rescheduled would not provide the certainty or simplicity created by the proposed rule." 78 Fed. Reg. at 60397. The Bureau expressed "concern[] that if moving a foreclosure sale to a later date could trigger new protections, such a policy may provide a disincentive for a servicer to reschedule a foreclosure sale for a later date." *Id.* The Bureau therefore concurs that in determining whether the protections of § 1024.41 attach, the court should consider the foreclosure date as of the date the loss mitigation application was received. The court sees no reason to depart from the plain text of § 1024.41(b)(3), or the Bureau's considered interpretation.

Further, even if the Bryans had submitted a timely loss mitigation application, it was not complete. An application is complete under Regulation X when the "servicer has received all the information that the servicer requires from a borrower in evaluation applications for the loss mitigation options available to the borrower." 12 C.F.R. § 1024.41(b)(1) (2013). During Ms. Bryan's March 10, 2017, call with Fay Servicing, she was explicitly and repeatedly advised that her loss mitigation application would be complete only if it included data from January 1, 2016 through February 28, 2017, and was dated and signed. (March 10 call at 10:45-17:36, 18:30-19:50, 20:20-20:24). Because the Bryans never submitted profit and loss data from either January or February 2017, their loss mitigation application was not complete.

Finally, a mortgage servicer is only required to comply with the proscriptions of § 1024.41 for a borrower's first loss mitigation application. § 1024.41(i) (2013).[6] Section 1024.41 does not apply to duplicative applications. *Id.* The Bryans argue that a new version of § 1024.41(i), which became effective on October 19, 2017, should govern this case.[7] Because this new version did not go into effect until after the foreclosure sale of the Bryans' home, this court will not apply the new provision to Fay Servicing. *See Landgraf v. USI Film Prods.*, 511 U.S. 244, 265 (1994) (The "principle that the legal effect of conduct should ordinarily be assessed under the law that existed when the conduct took place has timeless and universal human appeal.") (quoting *Kaiser Aluminum & Chemical Corp. v. Bonjorno*, 494 U.S. 827, 855 (1990)).

Under the plain language of the old provision, servicers are not prohibited from conducting foreclosure sales when faced with duplicative loss mitigation applications. This is not unreasonable, because otherwise borrowers might continually stave off foreclosure by repeatedly submitting new loss mitigation applications. The Bryans argue, however, that § 1024.41(i)'s prohibition on duplicative requests should not apply here because the Bryans transferred their mortgage loan to Fay Servicing from another servicer, and this is the first loss mitigation application they have submitted to Fay Servicing. (Pls.' Resp. at 7 (citing *Dent v. Investment Corp. of America.*, 2015 WL 9694807, at *5 (E.D. Mich. 2015), and *Garmou v. Kondaur Capital Corp.*, 2016 WL 3549356, at *3 (E.D. Mich. 2016)); *see* Comment 41(i)(1) to the 2013

---

[6] The text of § 1024.41(i) in effect at the time of the contested foreclosure reads: "Duplicative requests. A servicer is only required to comply with the requirements of this section for a single complete loss mitigation application for a borrower's mortgage loan application." 12 C.F.R. § 1024.41(i) (2016).

[7] The most recent version of § 1024.41(i) reads: "Duplicative requests. A servicer must comply with the requirements of this section for a borrower's loss mitigation application, unless the servicer has previously complied with the requirements of this section for a complete loss mitigation application submitted by the borrower and the borrower has been delinquent at all times since submitting the prior complete application." § 1024.41(i).

Mortgage Servicing Rules under RESPA ("2013 RESPA Servicing Final Rule"), 78 FR 10695, 10837 ("a transferee servicer is required to comply with the requirements of § 1024.41 regardless of whether a borrower received an evaluation of complete loss mitigation application from a transferor servicer."); *see also* 2016 Amendments to the 2013 Mortgage Rules, 81 FR 72160, at 72269–70). But this interpretation is contested. *See Mangum v. First Reliance Bank*, No. 4:16-CV-02214-RBH, 2017 WL 1062534, at *3 (D.S.C. 2017). Because the Bryans' application was both untimely and incomplete, as discussed above, the court need not decide this issue. Because Fay Servicing has not violated § 1024.41(g), the court will grant Fay Servicing's motion for summary judgment as to Count III.

## Request for injunctive relief and a declaratory judgment – Counts V and VI

As detailed above, there are no genuine disputes as to material facts, and Fay Servicing is entitled to judgment as a matter of law as to Counts I, II, III, and IV. Because the Bryans have not prevailed on these counts, a declaratory judgment or injunctive relief in the Bryans' favor is not warranted. Accordingly, the court will grant Fay Servicing's motion for summary judgment as to Counts V and VI.

## CONCLUSION

For the reasons stated above, Fay Servicing's motion will be granted. A separate order follows.

_2/21/19_
Date

Catherine C. Blake
United States District Judge

14